# EXHIBIT D

CAUSE NO. DC 13-14996

FILED

13 DEC 23 AM 10: 48

| | | |
|---|---|---|
| TAYA KYLE a/k/a MRS. CHRIS KYLE | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | _____TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| CRAFT INTERNATIONAL LLC, | § | |
| CRAFT INTERNATIONAL RISK | § | |
| MANAGEMENT, LLC, STEVEN | § | |
| YOUNG, and BO FRENCH, | § | |
| | § | |
| Defendants. | § | DALLAS COUNTY, TEXAS |

---

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR ORDER REQUIRING INSPECTION OF CRAFT'S BOOKS AND RECORDS, APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF & APPLICATION FOR RECEIVER

---

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, **Taya Kyle** ("Plaintiff"), individually and on behalf of nominal Defendant **Craft International, LLC.** ("CRAFT"), and files this her Original Petition, Application for Order Requiring Inspection of Craft's Books and Records, Application for Temporary Restraining Order and Temporary and Permanent Injunctive Relief and Application for Receiver, complaining of and against **Craft International Risk Management, LLC** ("CIRM"), **Steven Young** ("Young"), and **Bo French** ("French"), (CIRM, Young and French are collectively referred to as "Defendants") and, in support thereof, would respectfully show unto the Court as follows:

---

PLAINTIFF'S ORIGINAL PETITION –
646636

## I. DISCOVERY CONTROL PLAN

1.      In accordance with Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends that discovery be conducted under Level 3. Pursuant to Texas Rule of Civil Procedure 47, Plaintiff pleads that they seek monetary relief over $1 million and non-monetary relief.

## II. PARTIES

2.      Plaintiff Taya Kyle ("Kyle") is an individual, who resides in Ellis County, Texas.

3.      Nominal Defendant Craft International, LLC. ("CRAFT") is a Texas Limited Liability Company conducting business in Dallas County, Texas, and may be served with process by serving its registered agent Christopher E. Kirkpatrick, Esq. at 2101 Cedar Springs Road, Suite 1400, Dallas, Texas 75201.  CRAFT is a nominal defendant for purposes of bringing a derivative claim.

4.      Defendant Craft International Risk Management, LLC. ("CIRM") is a Texas Limited Liability Company, and may be served with process by serving its registered agent Christopher E. Kirkpatrick, Esq. at 2101 Cedar Springs Road, Suite 1400, Dallas, Texas 75201.

5.      Defendant Steven Young ("Young") is an individual who resides in Dallas County, Texas, and may be served at his residence located at 2700 Rosedale, Dallas, Texas 75205, or at his place of business located at 2101 Cedar Springs Road, suite 1400, Dallas, Texas 75201, or wherever else he may be found.

6.      Bo French ("French") is an individual who resides in Dallas County, Texas, and may be served at his place of business located at 2101 Cedar Springs Road, suite 1400, Dallas, Texas 75201, or wherever else he may be found.

7.      Plaintiff believes and hereby alleges that at all times mentioned herein, each of the Defendants were the agents, employees, or partners of one or more or all of each of the

remaining Defendants, and acted within the scope and authority of such agency, employment or partnership, and with the knowledge, consent, approval, and ratification of one or more or all of the remaining Defendants. Unless a particular Defendant is named, whenever this pleading references the acts of any Defendant or Defendants, such allegation shall be deemed to mean the acts of those Defendants named in the particular cause of action and each of them acting individually, jointly and severally.

## III. JURISDICTION AND VENUE

8.     Pursuant to Texas Government Code Section 24.007 and Texas Constitution Article 5 Section 8, jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limit of this Court, exclusive of interest and costs. Venue is proper in Dallas County, Texas for the reason that all or a substantial part of the events, acts, omissions and transactions giving rise to Plaintiff's claims and causes of action occurred in Dallas County, Texas, and because Defendants are actively conducting business in Texas and in Dallas County.

## IV. STANDING

9.     Taya Kyle ("Taya Kyle" and/or Ms. Kyle") owns 85% of CRAFT. As a result of the tragic death of her husband Chris Kyle ("Kyle"), Ms. Kyle became the assignee of Kyle's membership interests (sometimes referred to as "Units") pursuant to the Amended and restated Company Agreement of Craft International, LLC. ("CRAFT Agreement"). Since CRAFT and the other remaining members of CRAFT did not exercise their respective rights to purchase Kyle's Units within 130 days from Kyle's untimely death, Ms. Kyle became the assignee of Kyle's 8,500 Units in CRAFT. Ms. Kyle, as a derivative claimant, fairly and adequately represents the interests of CRAFT, and the rights of the other members similarly situated in enforcing the rights of CRAFT.

## V.   FACTUAL BACKGROUND

### GOD, COUNTRY, FAMILY AND THE BIRTH OF AN AMERICAN HERO

10.    Kyle's story begins in north-central Texas – Odessa to be exact. Kyle was raised a Christian and grew up in small towns all over Texas, where he learned the importance of family and traditional values, like patriotism, self-reliance, and watching out for your family and appreciating good neighbors.

### THE COWBOY WAY

11.    Kyle loved guns, hunting and riding horses. He had been riding horses from the time he could walk. In fact, his dad bought him his first gun at 8 years old, a bolt-action .30-06 Springfield rifle. Growing up he raised steers and heifers for FFA ("Future Farmers of America") and he hung out with the "ropers" in high school. Ranching filled his high school days and after that he was riding rodeo until a bronco flipped him over. Shortly, thereafter thinking he was going to join the marines, a recruiter talked him into joining the Navy and training to be a seal.

### THE MAN, THE MYTH, THE LEGEND

12.    Kyle was a United States Navy SEAL and not just any Navy Seal, Kyle was most lethal sniper in American military history, with 255 confirmed kills. Kyle served four (4) tours in Iraq, during which he survived 6 IED attacks, 3 gunshot wounds and two (2) helicopter crashes. SEALs would sit a base camp telling stories about serving with "The Legend." Kyle was even the topic of conversation for the enemies. For his deadly track record as a marksman during his deployment to Ramadi, the insurgents named him *Shaitan Ar-Ramadi* (The Devil of Ramadi) and even put a $20,000.00 bounty on his head that was later increased to $80,000.00.

13.    For all Kyle's heroics he was awarded the fourth highest commendation awarded for acts of heroism, acts of merit, and/or meritorious service in combat zone. Kyle holds two (2)

Silver Stars, five (5) bronze stars with valor, two (2) Navy and Marine Corps Achievement Medals, and one (1) Marine Corps Commendation. He was also awarded the Grateful Nation Award by the Jewish Institute for National Security Affairs

## Victorious Warriors Win First and Then Go To War

14. Kyle was born a winner, but lived like a legend. He was honorably discharged from the Navy in 2009 and moved his family from California to Texas with his wife, Taya, and two children. He remained in the spotlight after leaving the Navy whether it was by writing a *New York Times* bestselling autobiography *American Sniper,* going shooting with Governor Perry or developing FITCO Cares Foundation, a non-profit organization that created the Heroes Project to provide, among other things, free in-home fitness equipment to in-need veterans.

15. In addition to his extracurricular activities Kyle co-founded CRAFT, a tactical training company for the US military and Law Enforcement communities. CRAFT is a consulting and training services provider offering a wide range of services and training to federal, state and local customers. CRAFT specializes in providing turnkey mission solutions to ensure complete operation success.

16. Kyle envisioned CRAFT to provide a combination of technical expertise, and operational knowledge to provide military training and solutions for its customers. Since the inception of CRAFT, it has grown significantly and now provides professional consulting and management solutions in addition to its military training.

17. Kyle also designed and created the CRAFT Skull logo, which combines several pieces of Chris Kyle's life and service, but mainly was created to honor his fallen teammates.



18.    The story behind the CRAFT Skull logo is in tribute to Kyle's fallen teammates. As part of SEAL Team 3, Kyle and his fellow teammates painted similar skulls on their gear in order to strike fear in the enemy. The crosshair symbolizes his time spent on a sniper rifle and is also in the form of a templar cross to symbolize faith. Lastly, the crosshair is on the right eye to honor fellow SEAL Ryan Job, who was critically wounded when he was shot in the right eye while on deployment to Iraq in 2006. Following the successful mission by Navy SEALs of freighter Captain Richard Phillips on Easter morning in 2009, Ryan Job was asked by a local reporter if he thought using Navy SEALs against Somali pirates was overkill. His response was "despite what your mama told you, violence does solve problems." Ryan passed away in September of 2009 following complications during reconstructive surgery. Kyle created the CRAFT Skull log as a daily reminder of all the sacrifices that his teammates have made..

19.    CRAFT owns the CRAFT Skull logo. *Pictured above.*

20.    On February 2, 2013, Kyle was shot and killed at a shooting range by a fellow veteran who Kyle had purportedly taken to the gun range to help him with post traumatic stress disorder.

**UPON KYLE'S DEATH, YOUNG AND FRENCH HIJACK CRAFT**

21.    Kyle is and was the face of CRAFT. He spent years developing CRAFT and devoted his time, talents and creativity to making it a successful company. Upon information

and belief, CRAFT has also entered into numerous lucrative deals with companies, such as Nike and the Fellowship Church, in connection with the CRAFT Skull logo as well as Chris Kyle's likeness.

22. Defendant Young is the Manager, Director and Chief Executive Officer of CRAFT. Upon information and belief, Young holds a 3% membership interest in CRAFT. Defendant French is CRAFT's Chief Operating Officer and, upon information and belief, holds a 3% membership interest in CRAFT. CRAFT is the managing member of CIRM. Young is the CEO of CIRM and French is the COO. It is unknown how many Units that CRAFT, Young and French own in CIRM.

23. Defendants Young and French, have no military training and had no prior relationship with Kyle. Unlike Kyle, Young was looking to make a name for himself. Young is a former unsuccessful hedge fund manager who previously ran a hedge fund named Apriven Management, LLC. ("Apriven"). Apriven was one of the hedge funds that invested with the Petters Group Worldwide, LLC. whose founder Thomas Petters was charged with and later convicted of mail fraud, wire fraud, money laundering and obstruction of justice for overseeing a $3.5 billion dollar Ponzi scheme. Apparently, French is also a former hedge fund manager and friend of Young.

24. Young and French were thrown upon Kyle through a mutual associate, J. Kyle Bass, who went to college with Young and French. Young and French weaseled their way into CRAFT, claiming they were the financial geniuses necessary to making CRAFT a financial success. Unfortunately, and unbeknownst to Kyle, however, it appears that these two former hedge fund managers were only interested in their own financial gain, not the interests of CRAFT, Kyle, or his family.

25.     Upon information and belief, Defendants Young and French have usurped CRAFT's business opportunities for their personal benefit.   Moreover, it is believed that Defendants Young and French diverted CRAFT's assets, contracts, copyrights and trademarks to another entity for their own personal benefit, and to the exclusion of Kyle and his widow, Ms. Kyle.

26.     Upon information and belief, while Kyle was building and developing CRAFT, Defendants were manipulating CRAFT's stock, mishandling funds, diverting assets and mismanaging and usurping CRAFT's contracts. Unfortunately, this is not Young's first rodeo. He is an experienced thief. In 1988, he was arrested for burglary of a vehicle, and after having the opportunity to watch Thomas Petters first hand, he believes he is a pro.

27.     On information and belief, the Defendants were looking for a "free ride," as said Defendants no longer have to make the same investment and commitment to building their business as Chris Kyle did. On information and belief, the Defendants' plan was to create their own single purpose business entity in order to: unfairly compete with their CRAFT; engage in predatory business practices by stealing CRAFT's assets, client lists, contacts, contracts, trademarks, training and operating manuals; tortiously interfere with their contractual relationships; and, ultimately cause confusion in advertising services.

**THE DEFENDANTS STEAL CRAFT**

28.     On or about December 6, 2013, Defendant Young, on behalf of CRAFT, demanded that Taya Kyle sell her 8,500 Units in CRAFT under the CRAFT Agreement.  Young advised Taya Kyle that her Units were worth $0, but offered to purchase her shares for $12,500, which he stated was the expense to have a business valuation performed in order to determine the fair market value of Ms. Kyle's Units in CRAFT.

29.     Pursuant to the CRAFT Agreement, CRAFT'S rights to purchase Taya Kyle's Units under Section 3.6 of the CRAFT Agreement have <u>expired</u>. Section 3.6(f) of the CRAFT Agreement specifically provides for the following:

(f)     <u>Closing</u>. The closing of the purchase of the CP Units (the "***CP Closing***") shall occur no later than one hundred and thirty (130) days following the CP Notice Date. At the CP Closing, the CP Spouse will Transfer the portion of the CP Unites sold to the CP Member, the Company, the Founder and/or the Non-Founder, free and clear of any encumbrances of any kind whatsoever other than those created by this Agreement, in exchange for the CP Purchase Price.

30.     Kyle passed away on February 2, 2013, which is the Community Property Event, which triggered the Community Property Notice Date. As such, **CRAFT'S rights under Section 3.6 expired more than seven (7) months ago**. Even though CRAFT failed to purchase Taya Kyle's Units within the specified time set forth in the CRAFT Agreement, CRAFT continues to assert its rights under Section 3.6, and has nominated an appraiser to evaluate Ms. Kyle's Units.

31.     Pursuant to the CRAFT Agreement, since Ms. Kyle's Units were not purchased under the Community Property section, and she has not been admitted as a Substitute Member of CRAFT, she is considered an "assignee" under Section 3.8 of the CRAFT Agreement. Section 3.8(a) provides:

(a)     Unless an Assignee becomes a Substitute Member in accordance with the provisions of Section 3.7, it shall not be entitled to any of the rights (including voting rights) granted to a Member hereunder or under TBOC, other than the right to receive the share of distributions and any other items attributable to a Member's Units to which its assignor would otherwise be entitled.

32.     Although Young and French had repeatedly represented to Taya Kyle, that CRAFT's books and records were <u>available for inspection,</u> when she retained legal counsel and requested that she and her representatives be allowed to inspect and copy CRAFT's books and

records, CRAFT refused, advising her that as an assignee, she had no rights to review CRAFT's books and records under the CRAFT Agreement or the Texas Business Organization Code. Although CRAFT contends that the CRAFT Agreement trumps that of the Texas Business Organization Code, Section 101.052 specifically states that the company agreement governs except that as provided for by 101.054, and as long as the company agreement is not inconsistent with Texas law. TEX. BUS. ORG. CODE § 101.052(d).   Moreover, Section 101.054(e) specifically provides that the company agreement may not unreasonably restrict a person's right of access to records and information under Section 101.502.   Section 101.502 provides as follows:

RIGHT TO EXAMINE RECORDS AND CERTAIN OTHER INFORMATION.

(a)   A member of a limited liability company or an assignee of a membership interest in a limited liability company, or a representative of the member or assignee, on written request and for a proper purpose, may examine and copy at any reasonable time and at the member's or assignee's expense:

(1)  records required under Sections 3.151 and 101.501;  and
(2)  other information regarding the business, affairs, and financial condition of the company that is reasonable for the person to examine and copy.

(b)  A limited liability company shall provide to a member of the company or an assignee of a membership interest in the company, on written request by the member or assignee sent to the company's principal office in the United States or, if different, the person and address designated in the company agreement, a free copy of:

(1)   the company's certificate of formation, including any amendments to or restatements of the certificate of formation;
(2)   if in writing, the company agreement, including any amendments to or restatements of the company agreement;  and
(3)  any tax returns described by Section 101.501(a)(2).

33.    On December 13, 2013, Taya Kyle requested to inspect CRAFT's books and records for the following purposes:

1.  Whether CRAFT has made unauthorized payments to itself or any entity owned or controlled by CRAFT or its members using Company funds.

2.  Whether CRAFT has made unauthorized payments to Craft International Risk Management ("CIRM") or any entity that Steven Young, K. Kyle Bass, Mark Spicer, and/or Bo French own or control using Company funds.

3.  Whether the Quick Books program of CRAFT contains all financial transactions of the Company since the Company started operations.

4.  Whether CRAFT has made unauthorized loans to itself or any entity owned or controlled by CRAFT using Company funds.

5.  Whether CRAFT has made unauthorized loans to CIRM or any entity that Steven Young, K. Kyle Bass, Mark Spicer, and/or Bo French own or control using Company funds.

6.  Whether CRAFT has co-mingled its funds with CIRM's funds and vice versa.

7.  Whether the CRAFT has generated sufficient profits for distribution to members.

8.  Whether CRAFT has used its profits for Company purposes.

9.  Whether CRAFT or CIRM have any trademarks or copyrights.

10. Whether CRAFT has generated any profits in connection with any trademarks or copyrights.

11. Whether CIRM or any other entity that Steven Young, K. Kyle Bass, Mark Spicer, and/or Bo French own or control received any profits in connection with Chris Kyle's likeness and/or any copyright or trademark.

12. Whether CRAFT has generated any profits in connection with any trademarks or copyrights assigned to it by Chris Kyle.

13. Whether there have been any sales, transfers, or assignments of membership rights, title, or interests in the Company that did not comply with the Company's Limited Liability Company Agreement.

14. Whether CIRM, acting alone or in concert with others, committed any act of fraud or intentional dishonesty, gross negligence or willful misconduct, with respect to the Company or violated a material term of the Company's Limited Liability Company Agreement.

34. Upon information and belief, Young and French transferred and diverted CRAFT's contracts and assets to another entity without the knowledge, consent or authority of Kyle, the majority interest holder of CRAFT. Upon information and belief, Young and French usurped CRAFT's business opportunities for their personal benefit.

35. At no time did Plaintiff or CRAFT consent, expressly or impliedly, to Defendants' copying, downloading, removal, retention, distribution, or transferring of CRAFT's property or assets. The Defendants have been in knowing and unauthorized possession and control of CRAFT since Chris Kyle's death. Since that time, at the latest, Defendants may have been obtaining unjust and substantial benefit from CRAFT's property to third parties without CRAFT's consent and without paying CRAFT for the value of such property. The Defendants' improper assumption and exercise of dominion and control over the CRAFT's property has and will continue to interfere with and diminish CRAFT's and the Plaintiff's rights in that property.

## VI.    ACCESS TO BOOKS AND RECORDS

### A.    Standing & Purpose to Inspect CRAFT's Books and Records

36. Taya Kyle owns 8,500 Units of CRAFT, and is the 85% interest holder of CRAFT. As a result of the death of her husband, Chris Kyle, Taya Kyle became an assignee of Chris Kyle's membership Units. Ms. Kyle, individually and as a derivative claimant, fairly and adequately represents the interests and the rights of the other members similarly situated, if any, in enforcing the rights of CRAFT.

37. Ms. Kyle, as an assignee of 8,500 Units of CRAFT seeks to inspect the books and records for the following purposes: (a) Whether CRAFT has made unauthorized payments to

itself or any entity owned or controlled by CRAFT or its members using Company funds; (b) Whether CRAFT has made unauthorized payments to CIRM or any entity that Steven Young, K. Kyle Bass, Mark Spicer, and/or Bo French own or control using Company funds; (c) Whether the Quick Books program of CRAFT contains all financial transactions of the Company since the Company started operations; (d) Whether CRAFT has made unauthorized loans to itself or any entity owned or controlled by CRAFT using Company funds; (e) Whether CRAFT has made unauthorized loans to another entity that Steven Young, K. Kyle Bass, Mark Spicer, and/or Bo French own or control using Company funds; (f) Whether CRAFT has co-mingled its funds with another entity's funds and vice versa; (g) Whether CRAFT has generated sufficient profits for distribution to members; (h) Whether CRAFT has used its profits for Company purposes; (i) Whether CRAFT or CIRM have any trademarks or copyrights; (j) Whether CRAFT has generated any profits in connection with any trademarks or copyrights; (k) Whether another entity that Steven Young, K. Kyle Bass, Mark Spicer, and/or Bo French own or control received any profits in connection with Chris Kyle's likeness and/or any copyright or trademark; (l) Whether CRAFT has generated any profits in connection with any trademarks or copyrights assigned to it by Chris Kyle; (m) Whether there have been any sales, transfers, or assignments of membership rights, title, or interests in the Company that did not comply with the Company's Limited Liability Company Agreement; and, (o) Whether another entity controlled and/or owned by the Defendants, acting alone or in concert with others, committed any act of fraud or intentional dishonesty, gross negligence or willful misconduct, with respect to the Company or violated a material term of the Company's Limited Liability Company Agreement. Proper notice was given to Steven Young, CRAFT's manager, CEO and director on December 13, 2013.

38.     Pursuant to Sections 101.109(4) and 101.502 of the Texas Business Organization, Taya Kyle as an assignee is entitled to review and inspect CRAFT's books and records in person or through an agent, accountant or an attorney.

39.     Clearly, Taya Kyle is entitled to examine and copy any information regarding CRAFT and CIRM'S business, its affairs, and financial condition. Certainly, in light of Defendants' actions as alleged above, it is reasonable for a member to request access to all financial information and records, including the Detailed Balance Sheet Reports and the Detailed Profit and Loss Reports as well as all activities involving Young, French and CIRM for the purpose of determining to what extent, if any, have they usurped CRAFT's opportunities, and/or diverted CRAFT's contracts and assets over to themselves or another entity. Defendants' refusal to provide the information is unreasonable and a violation of the Texas Business Organizations Code.

40.     Plaintiff, as an assignee, and as the derivative representative of CRAFT, requests this Court order CRAFT's Manager, CEO and Director, Young to provide access to its entire accounting system including all financial information from inception, including all transactions of the company, all contracts regarding the company's business affairs, and all information regarding the business, affairs and financial condition of CRAFT and CIRM.

## VI.    ATTORNEYS' FEES FOR INSPECTION OF BOOKS AND RECORDS

41.     Plaintiff requests payment of her attorneys' fees pursuant to the Texas Business Organizations Code on the grounds that CRAFT, by and through Young and French, have refused to allow Plaintiff to examine and make copies of CRAFT's books and records, and therefore are liable to the Plaintiff for all costs and expenses, including attorneys' fees, incurred in enforcing their rights.

## VII.   CAUSES OF ACTION

### DECLARATORY ACTION

42.   Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

43.   As authorized by the Texas Declaratory Judgment Act (Texas Civil Practice and Remedies Code, Chapter 37), Plaintiff requests that this Court declare the rights, status, and obligations between the Parties.  In particular, Taya Kyle requests that this Court declare that neither CRAFT nor the Defendants have any rights under Section 3.6 of the CRAFT Agreement to purchase Taya Kyle's 8,500 Units as it expired 130 days after the death of Chris Kyle.   Taya Kyle further requests that this Court declare that she is entitled to inspect the books and records under the CRAFT Agreement as well as the Texas Business Organization Code.   Plaintiff further requests this Court to declare the rights, status, and obligations between the Parties in connection with the CRAFT Agreement.

44.   Further, Plaintiff requests the award of his reasonable and necessary attorneys' fees and all costs of court as authorized by TEX. CIV. PRAC. & REM. CODE § 37.009.

### BREACH OF FIDUCIARY DUTY

45.   Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

46.   The acts and omissions of Defendants as alleged above constitute a breach of their fiduciary duties as the manager, officer and director of CRAFT. Defendants had a fiduciary duty to act in CRAFT's best interest. By their actions and omissions, Defendants have breached their fiduciary duties to CRAFT.  A fiduciary relationship exists between Defendants and CRAFT

because Defendants assumed management and total control over CRAFT after the death of Chris Kyle.

47.    As a fiduciary, Defendants owed CRAFT the fiduciary duties of care, loyalty, integrity, utmost good faith, complete candor, fair and honest dealing, and full disclosure of all material facts. By the actions and omissions described above, Defendants breached their fiduciary duties to CRAFT and, in fact, have acted in bad faith and demonstrated misfeasance, malfeasance and nonfeasance while managing CRAFT, and while usurping the management and control of CRAFT.

48.    In addition, Defendants had a duty of full disclosure, openness, honesty, good faith and fairness regarding self-dealing transactions between CRAFT, themselves and any other affiliated company owned and/or controlled by Defendants. Defendants had the duty to refrain from competing with CRAFT and to refrain from self-dealing. Defendants had the duty not to usurp CRAFT's opportunities for personal gain. Defendants' breach of their fiduciary duty proximately caused damage to CRAFT in an amount in excess of the jurisdictional limits of this court. Further, Defendants benefited from their breach of their fiduciary duty.

49.    The multiple breaches of the fiduciary duties of Defendants have proximately caused actual, consequential and special damages to CRAFT in an amount in excess of the jurisdictional limits of this Court, for which Plaintiff now sues on behalf of CRAFT.

## BREACH OF FIDUCIARY DUTY II

50.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

51.    As a 85% interest holder of CRAFT, Plaintiff Taya Kyle can complain about the breaches of fiduciary duties of Defendants Young and French as officers, directors and managers

of CRAFT.   As a fiduciary, Defendants Young and French owed Ms. Kyle the fiduciary duties of care, loyalty, integrity, utmost good faith, complete candor, fair and honest dealing, and full disclosure of all material facts.   By the actions and omissions described above, Defendants Young and French breached their fiduciary duties to Ms. Kyle and, in fact, have acted in bad faith and demonstrated misfeasance, malfeasance and nonfeasance while managing CRAFT, and while usurping the management and control of CRAFT.

52.   Young, French and possibly others have conspired with each other to breach their fiduciary duties and aided and abetted each other to breach their fiduciary duties to Ms. Kyle. The multiple breaches of the fiduciary duties of Defendants have proximately caused actual, consequential and special damages to Ms. Kyle in an amount in excess of the jurisdictional limits of this Court.

## FRAUD

53.   Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

54.   The acts and omissions of Defendants as alleged above constitute fraud. Specifically, Defendants made statements about the financial condition and equity value of CRAFT as well as the self-dealing transactions involving CRAFT and CIRM that were false, and were known to be false and misleading at the time they were made.   Such statements were made with the intention that Plaintiff and the other members and investors rely on such statements to their detriment.   Plaintiff and the other members reasonably relied upon such statements to their detriment.

55.   Alternatively, Defendants failed to disclose material facts regarding the financial condition, the use of company funds, and value of CRAFT and CIRM, their actions managers,

directors and officers and the self-dealing transactions involving CRAFT and CIRM with the intention of misleading Plaintiff and the members regarding their activities and the condition of the CRAFT to their detriment.

56.    Such fraudulent and misleading conduct by Defendants proximately caused damage to Plaintiff, individually, and CRAFT and its members in an amount in excess of the jurisdictional limits of this court.

## NEGLIGENCE/GROSS NEGLIGENCE

57.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

58.    The actions and omissions of Defendants as alleged constitute negligence and/or gross negligence in the management of CRAFT. Such negligence and/or gross negligence proximately caused damage to CRAFT and its members in an amount in excess of the minimum jurisdictional limits of this court.

## CONVERSION & CIVIL THEFT I

59.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

60.    Defendants have converted assets rightfully belonging to CRAFT without CRAFT's permission or authority. Such assets include contracts, copyrights, trademarks, profits, and cash converted to the detriment of CRAFT and to the benefit of Defendants. Defendants' conversion and theft of CRAFT's property was malicious because they knew their actions were unlawful and without authority. Defendants' conduct also constitutes violations of the Texas Theft Liability Act.   As a result of Defendants' theft and conversion of CRAFT's property,

CRAFT has suffered actual, consequential and special damages for which Plaintiff now sues on behalf of CRAFT.

## CONVERSION & CIVIL THEFT II

61.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

62.    Defendants have attempted to convert assets rightfully belonging to Plaintiff Taya Kyle without Plaintiff's permission or authority. Such assets include Taya Kyle's Units which Defendants are attempting to convert to the detriment of Plaintiff and to the benefit of Defendants. Defendants' attempted conversion and theft of Plaintiff's property was malicious because they knew their actions were unlawful and without authority. Defendants' conduct also constitutes violations of the Texas Theft Liability Act. As a result of Defendants' theft and conversion of Plaintiff's property, Plaintiff has suffered actual, consequential and special damages for which it now sues.

## CIVIL CONSPIRACY

63.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

64.    Defendants Young, French and possibly others acted in concert and conspired together to commit the breaches, thievery and tortious acts described herein. Accordingly, the Defendants should be held jointly and severally liable for any damages awarded to Plaintiff or CRAFT as a result of this lawsuit.

## ALTER EGO

65.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

66.     The identity of CIRM and Young and French are in substance one and the same; CIRM is the alter ego of Young and French and vice versa, acting solely as a conduit for the performance of the other's business, and as a device to cause harm or prejudice to those dealing with it. In support thereof, Plaintiff will show that, at all material times:

    a.    CIRM, Young and French constitute a single business enterprise and act as the alter ego of the other;

    b.    Upon information and belief, CIRM, Young and French share common officers, directors, and employees;

    c.    CIRM , Young and French do not maintain distinct operations;

    d.    CIRM, Young and French share a common accounting department; and,

    e.    CIRM, Young and French have formed their corporate structure for the purpose of avoiding liability by improperly shielding assets.

67.     Upon information and belief, CIRM, Young and French have committed these acts to shield liability and as a sham to perpetrate a fraud and have committed actual fraud.

## ACCOUNTING

68.     Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

69.     Plaintiff seeks an accounting to determine the amount of improper receipts by Young and French of money at the expense of CRAFT and CIRM, and to determine the amount of loss to CRAFT and CIRM caused by Defendants' actions and omissions. Defendants have improperly gained and realized financial benefit and profit at the expense of CRAFT and CIRM and have caused damage to CRAFT and CIRM.

70.     The exact nature and extent of the improper receipts of money and the resulting damage to CRAFT by the Defendants is unknown and cannot be determined without an accounting of the transactions of CIRM and CRAFT.

## CONSTRUCTIVE TRUST

71.     Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

72.     Plaintiff pleads for and are entitled to a constructive trust to be placed on all assets acquired by the Defendants resulting from the numerous breaches of their fiduciary duties and common law fraud, fraud in the inducement and conversion as set forth herein.   Specifically, a constructive trust should be formed for the benefit of CRAFT, consisting of all of Defendants' respective ill-gotten gains and/or their proceeds.

73.     Defendants acted with malice, thereby necessitating an award of punitive damages in the maximum amount allowed by law.

## DISGORGEMENT

74.     Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

75.     Plaintiff requests disgorgement of those profits and benefits obtained by Defendants arising from any such breach of fiduciary duty to CRAFT.  Plaintiff further requests disgorgement of those profits and benefits obtained by Defendants through CRAFT arising from such breach of fiduciary duty.

76.     Plaintiff further seeks an order requiring Defendants to disgorge all illicit receipts to CRAFT. Plaintiff also seeks and order requiring Defendants to disgorge all illicit receipts to CRAFT.

## APPLICATION FOR RECEIVER

77.     Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

78.   The actions of Defendants have been, and will likely continue to be, illegal, fraudulent and in breach of their respective fiduciary duties to CRAFT, CIRM and the Plaintiff. If Defendants are allowed to continue their course of conduct, the assets of CRAFT and CIRM, under the control of Defendants. will dissipate, if not altogether disappear.   Defendants have already recently represented to Plaintiff Taya Kyle that CRAFT is now essentially "worthless." At least with regard to the matters pleaded herein, Defendants have engaged in, and are currently engaging in fraud, gross mismanagement, misfeasance, malfeasance, nonfeasance, and are ruining CRAFT's financial assets and benefits.   The actions of Defendants demonstrate a likelihood that CRAFT's assets are in danger of being lost, stolen, removed or materially injured. Further, it is believed by Plaintiff that some, if not all of, CRAFT'S assets have been, or are being, transferred to another entity.

79.   Injunctive relief is itself not an adequate remedy to prevent the irreparable harm that Defendants will continue to inflict, because Defendants Young and French control the assets of CRAFT and CIRM.   As a result, Defendants are in a position to continue their wrongful acts and misfeasance, malfeasance and nonfeasance.   CRAFT is in imminent danger of further and future great loss which cannot otherwise be prevented without the appointment of a receiver.

80.   Plaintiff complains of Defendants for taking, among others, the following actions all in violation of their fiduciary duties of care and loyalty to CRAFT and CIRM:

   a.   Wasting company assets;

   b.   Entering into self dealing for the individual Defendants; and,

   d.   Conferring substantial benefits on the individual Defendants at the
        expense of CRAFT and CIRM;

81.   Plaintiff seeks the appointment of a receiver under Texas law to rehabilitate the company on the following grounds:

a. The appointment of a receiver sought by Plaintiff is necessary to conserve the assets and business of CRAFT and CIRM and to avoid damage to the parties at interest;

b. All other remedies available at law or in equity, including the appointment of a receiver for the specific assets of CRAFT and CIRM are inadequate to protect CRAFT, CIRM and Taya Kyle.

c. The acts of the Defendants, as set forth herein above, or those in control of the corporation are illegal, oppressive, or fraudulent; and

d. Equity requires the appointment of the receiver for the protection of CRAFT, CIRM and Plaintiff Taya Kyle.

72. As a result of the foregoing, Plaintiff asserts this cause of action for the purpose of having a receiver appointed over CRAFT, CIRM and/or over the assets of CRAFT and CIRM in order to bring about a rehabilitation and to prevent the continued waste and abuse of power by the Defendants.

73. Plaintiff submits that the Court should appoint such person as the Court shall deem qualified as operating receiver over the corporation and/or over the assets of CRAFT and CIRM with such powers as are provided by laws of general applicability relating to receivers and such other powers deemed appropriate by the Court to accomplish the corporate rehabilitation.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

5. Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

74. Plaintiff seeks a temporary restraining order against each of the Defendants prohibiting them from (i) hiring a business valuator to value Taya Kyle's Units; (ii) to seeking to purchase or take Taya Kyle's Units in CRAFT; or (ii) altering any documents, including CRAFT's or CIRM's books and records.

75.     Plaintiff will suffer irreparable harm, injury, losses and damages if the Defendants are not immediately enjoined and restrained as requested herein.  Plaintiff has a substantial likelihood of prevailing on the merits; no harm or prejudice will result to the Defendants by the granting of the requested injunctive relief; and immediate and irreparable harm would result before notice can to be served and a hearing had hereon.

76.     Accordingly, Plaintiff requests this Court issue a temporary restraining order against the Defendants restraining them, their agents, representatives, employees or anyone acting on their behalf, until further order of the Court from:

(a) Purchasing, transferring or otherwise taking Taya Kyle's Units;

(b) Transferring any funds from CRAFT or CIRM, or incurring debt other than in the ordinary course of business;

(c) Altering CRAFT or CIRM's books and records;

(d) Destroying, transferring, conveying, assigning, hypothecating, alienating or hiding any of the Defendants, CRAFT or CIRM's documents and emails in hard paper form and those found on computer hard drives, computer floppy disks, computer backup tapes or backup disks, or any other electronic media under the control, constructive control, or in the possession of any of the Defendants;

(e) Transferring, conveying, assigning, hypothecating, alienating, destroying or hiding in any way any of CRAFT's or CIRM's money, stock, or other assets under the control or constructive control of any of the Defendants;

(f) Destroying, removing, concealing encumbering, transferring, conveying, assigning, hypothecating, alienating or otherwise harming or reducing the value of any property or assets of CRAFT or CIRM;

(g) Falsifying any written document or record, in any form, relating to any of the property or assets of CRAFT or CIRM;

(h) Damaging or destroying the tangible property of CRAFT or CIRM including any document that represents or embodies anything of value; and

(i) Causing pecuniary loss to CRAFT or CIRM.

77. Plaintiff and CRAFT will continue to suffer irreparable harm, injury, losses and damages if Defendants are not immediately enjoined and restrained as requested herein. Plaintiff and CRAFT have a substantial likelihood of prevailing on the merits, and no harm or prejudice will result to Defendants by the granting of the requested injunctive relief.

78. Plaintiff seeks injunctive relief, including a temporary restraining order, preliminary injunction and permanent injunction from this Court pursuant to Tex. R. Civ. P. 680, Tex. Civ. Prac. and Rem. Code § 65.011, that latter of which provides in part:

(1) the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;

(2) a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

(3) the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions; [or]

*       *       *

(5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law.

TEX. CIV. PRAC. & REM. CODE § 65.011.

79. Plaintiff is willing to post a bond in the amount the Court deems appropriate, but requests that the bond be waived or in a nominal amount.

80. For these reasons, a temporary restraining order should be issued immediately enjoining and restraining Defendants and any of their agents, servants, employees, assignees,

transferees, and beneficiaries, or anyone acting in concert with Defendants, or anyone with actual notice of the temporary restraining order, whether directly or indirectly.

## EXEMPLARY DAMAGES

6.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

81.    The acts of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice.   In order to punish Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff seeks recovery from Defendants for exemplary damages as provided by Chapter 41 of the Texas Civil Practice and Remedies Code.

## ATTORNEYS' FEES

7.    Plaintiff re-alleges each and every allegation set forth in the preceding paragraphs of this Petition and incorporates them by reference herein.

82.    Request is made for all costs and reasonable and necessary attorneys' fees incurred by or on behalf of the Plaintiff herein, and all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

## CONDITIONS PRECEDENT

83.    All conditions precedent to the Plaintiff's right of recovery have been performed, have occurred, or have been waived.

## NO WAIVER

84.    By filing this lawsuit, Plaintiff does not waive or release any rights, claims, causes of action, or defenses or make any election of remedies that they have, but expressly reserve such rights, claims, causes of action and defenses.

## JURY DEMAND

85.    Plaintiff hereby demands trial by jury on all claims and issues so triable.

## REQUEST FOR DISCLOSURE

86.    Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendants disclose to Plaintiff within fifty (50) days of this service of this request, the information and materials described in Rule 194.2(a) through 194.2(k).

87.    In the event that your response to this Request requires the production of voluminous documents, Plaintiff requires that the responsive documents be produced for inspection and/or reproduction in the offices of the undersigned attorneys.  Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, you are hereby advised that the production of documents in response to this Request operates to authenticate documents produced such that they may be used against you in any pretrial proceeding or at trial unless you timely and properly object to the authenticity of the documents in accordance with Rule 193.7 of the Texas Rules of Civil Procedure.

## PRAYER

WHEREFORE, Plaintiff Taya Kyle, individually and derivatively on behalf of CRAFT prays that Defendants be cited to appear and to answer herein and that, injunctive relief requested herein be granted, and that upon final hearing, the Court enter judgment in favor of Plaintiff

against Defendants, jointly and severally, in an amount in excess of the minimum jurisdictional limits of this Court for actual, special, consequential and punitive damages, reasonable attorneys' fees, reasonable paralegal fees, costs of court, and pre-and post-judgment interest at the highest rate allowed by law, and for such other and further relief at law or in equity, to which the Plaintiff may show itself to be justly entitled.

**DATED:**     **December___, 2013**

RESPECTFULLY SUBMITTED,

FRIEDMAN & FEIGER, L.L.P

By:_____

Lawrence J. Friedman
State Bar No. 07469300
Shauna A. Izadi
State Bar No. 24041170
Jason H. Friedman
State Bar No. 24059784
5301 Spring Valley Road, Suite 200
Dallas, Texas 75240
(972) 788-1400 (Telephone)
(972) 788-2667 (Facsimile)
**ATTORNEYS FOR PLAINTIFF TAYA KYLE**