# EXHIBIT B

FILED
DALLAS COUNTY
9/26/2014 5:05:12 PM
GARY FITZSIMMONS
DISTRICT CLERK

CAUSE NO. DC 14-08840

| ESTATE OF CHRIS KYLE and TAYA KYLE, | § § § § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiffs, | § § | |
| v. | § § | 191st JUDICIAL DISTRICT |
| CHRISTOPHER KIRKPATRICK, ESQ., | § § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

### PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, the Estate of Chris Kyle and Taya Kyle, and file this their First Amended Original Petition, complaining of the actions of Defendant Christopher Kirkpatrick, Esq. and, for cause, would respectfully show this Court as follows:

#### I. DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 3 pursuant to T.R.C.P. 190.4.

#### II. PARTIES

2. Plaintiff Taya Kyle is an individual who resides in Ellis County, Texas.

3. Plaintiff Taya Kyle, on behalf and as Executrix of the Estate of Chris Kyle, is a resident of Ellis County, Texas.

4. Defendant Christopher Kirkpatrick ("Kirkpatrick") is an individual who has already entered an appearance in this lawsuit, and may be served through its attorney of record pursuant to the Texas Rules of Civil Procedure.

### III. JURISDICTION AND VENUE

5. Venue is proper in Dallas County, Texas, pursuant to Chapter 15 of the Texas Civil Practice & Remedies Code. Jurisdiction is proper in this Court as the damages fall within the jurisdictional limits of this Court. Pursuant to TEX. R. CIV. P. 47 Plaintiffs seek monetary relief over $1,000,000.00.[1]

### IV. FACTUAL BACKGROUND

#### LEGEND OF CHRIS KYLE

6. Chris Kyle was a United States Navy SEAL, and not just any Navy SEAL, Chris Kyle was the most lethal sniper in American military history, with 255 confirmed kills. Chris Kyle served four (4) tours in Iraq, during which he survived 6 IED attacks, 3 gunshot wounds and two (2) helicopter crashes. SEALs would sit in a base camp telling stories about serving with "The Legend." Chris Kyle was even the topic of conversations by the enemies. For his deadly track record as a marksman during his deployment to Ramadi, the insurgents named him *Shaitan Ar-Ramadi* (The Devil of Ramadi) and even put a $20,000.00 bounty on his head that was later increased to $80,000.00.

7. For all of Chris Kyle's heroics, he was awarded the third highest commendation awarded for acts of heroism, acts of merit, and/or meritorious service in combat zone. Chris Kyle holds two (2) Silver Stars, five (5) bronze stars with valor, two (2) Navy and Marine Corps Achievement Medals, and one (1) Marine Corps Commendation. He was also awarded the Grateful Nation Award by the Jewish Institute for National Security Affairs.

---

[1] Plaintiffs reserve the right to amend, decrease and/or increase the amount of damages plead based on evidence developed before trial.

VICTORIOUS WARRIORS WIN FIRST AND THEN GO TO WAR

8. Chris Kyle was born a winner, but lived like a legend. He was honorably discharged from the Navy in 2009 and moved his family from California to Texas with his wife, Taya, and two children. He remained in the spotlight after leaving the Navy whether it was by writing a *New York Times* bestselling autobiography *American Sniper*, going shooting with Texas Governor Rick Perry or developing FITCO Cares Foundation, a non-profit organization that created the Heroes Project to provide, among other things, free in-home fitness equipment to in-need veterans.

9. In addition to his extracurricular activities Chris Kyle co-founded Craft International LLC ("Craft"), a tactical training company for the US military and Law Enforcement communities. Craft is a consulting and training services provider offering a wide range of services and training to federal, state and local customers. Craft specializes in providing turnkey mission solutions to ensure complete operation success. Chris Kyle envisioned Craft to provide a combination of technical expertise, and operational knowledge to provide military training and solutions for its customers.

10. Chris Kyle is and was the face of Craft. He spent years developing Craft and devoted his time, talents and creativity to making it a successful company. At the time of his death, Chris Kyle was the 85% owner of Craft, and therefore his Estate is the holder of the 85% interests in Craft. Craft is currently in bankruptcy, and is represented by Seymour Roberts and the law firm of Neligan and Foley, LLP.

11. On February 2, 2013, Chris Kyle was shot and murdered at a shooting range by a fellow veteran who Kyle had purportedly taken to the gun range.

### KIRKPATRICK PROVIDED LEGAL SERVICES TO EVERYONE DESPITE CONFLICT OF INTEREST

12. Prior to the inception of Craft, Chris Kyle met J. Kyle Bass ("Bass"), the principal of Hayman Capital Management, L.P. ("Hayman Capital"), who not only invested in Craft, but also offered Chris Kyle office space for Craft's offices to be similarly located at 2101 Cedar Springs Road where Hayman Capital's offices were located.

13. Mr. Kirkpatrick served, and continues to serve as in-house counsel to Hayman Capital which is also located at 2101 Cedar Springs Road, Dallas Texas. Simultaneously, Kirkpatrick also serves as Bass's personal counsel. Bass, a local self-described billionaire, longed to be associated with the deadliest sniper in American history, and was enamored with Chris Kyle. Bass is used to getting what he wants, and what he wanted was to be an integral part of Chris Kyle's life. In that regard, Bass raised more capital for Craft, and Bass even directed Kirkpatrick to serve as Chris and Taya Kyle's personal attorney on many issues, including, but not limited to the negotiation of Chris Kyle's books and movie deals. Kirkpatrick became Chris Kyle and Taya Kyle's attorney, and formed an attorney-client relationship with them. Chris Kyle and Taya Kyle sought legal advice from Kirkpatrick and Kirkpatrick gave legal advice to them. The Kyles relied on the legal advice that Kirkpatrick gave to them.

14. Kirkpatrick was bound by the Kyles' attorney-client privilege, and was required to hold Chris Kyle and Taya Kyle's secrets and confidences in trust. Bass wanted to live the SEAL lifestyle, and hoped to make an appearance in one of Chris Kyle's books or movies. Bass used Kirkpatrick in order to infiltrate Craft as well as Chris Kyle's personal life.

15. Beginning in 2009, Kirkpatrick, not only began representing and providing legal counsel to Craft, Bass, and Hayman Capital, he also began representing and providing personal

legal counsel to Chris Kyle, individually as well as his wife, Taya Kyle. As a result of the attorney-client relationship that was formed, Kirkpatrick owed the Kyles fiduciary duties, including the one of full candor and disclosure.

16. One of the various services rendered on behalf of Chris and Taya Kyle included the preparation of legal documents relating to the Kyle residence in Ellis County, Texas. Kirkpatrick simultaneously represented the Kyles as the buyer and Hayman Capital as the lender. Kirkpatrick was required to consult with each client concerning the implications of the common representation, including the advantages, the risk and the effect of the attorney-client privileges.[2] Kirkpatrick failed to disclose his conflict, failed to consult with the Kyles, and failed to get a written waiver of conflict of interest from the Kyles. Kirkpatrick also served as the trustee of Taya Kyle and Chris Kyle's family trust, and he also provided legal services and gave legal advice in connection with the Kyles' respective estate planning. Again, Kirkpatrick never disclosed any potential conflict to either Chris Kyle or Taya Kyle, explain the implications of the conflict, and never received a waiver from the Kyles.

17. Kirkpatrick also negotiated various contracts and intellectual property rights on behalf of Chris Kyle, individually, and provided Chris Kyle and his wife, Taya, with legal advice concerning their home mortgage while simultaneously representing Hayman Capital as lender, as well as receipt of proceeds from various deals that Chris Kyle had in the works. Kirkpatrick never explained his various conflicts of interests to the Kyles, and therefore the Kyles never had an opportunity to make an informed decision or give their informed consent to Kirkpatrick's legal representation of them, as mandated by the Texas Disciplinary Rules, in light of Kirkpatrick's numerous conflicts of interest.

---

[2] Texas Disciplinary Rule 1.07(a)(1)

### Kirkpatrick Simultaneously Represented Chris Kyle and Craft While Employed by Craft's Largest Creditor Without Explaining to Chris Kyle Any Conflict of Interest

18.     While providing personal legal services to the Kyles, Kirkpatrick was representing Craft, simultaneously negotiating contracts on behalf of Craft and serving as Craft's registered agent. While simultaneously representing Craft and Chris Kyle, and upon information and belief, Kirkpatrick advised Chris Kyle to assign his intellectual rights, of what is now known as the Craft logo, to Craft. Kirkpatrick, however, never disclosed his conflict of interest between Chris Kyle and Craft, Chris Kyle's employer, or his conflict of interest of simultaneously representing Bass and Hayman Capital, and therefore, Chris Kyle never had the opportunity to make an informed decision or consent to Kirkpatrick's representation of him in connection with the transfer of any intellectual property to Craft. Rule 1.06(b) of the Texas Disciplinary Rules prohibits certain representation that is substantially related to other representation or limited by the lawyer's responsibilities to other persons.[3] In some instances, such as this one, inconsistent positions precluded joint representation.

19.     Mr. Kirkpatrick is also an individual investor of Craft, but never fully explained his conflict of interest to the Kyles or obtained a Waiver as required under Rule 1.08 of the Texas Disciplinary Rules. Rule 1.08(a) provides that "a lawyer shall not enter into a business transaction with a client unless: (1) the transaction and the terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) **the client consents in writing**

---

[3] The Rule prohibits a lawyer from undertaking representation (1) involving "substantially related matter" in which the prospective client's interests would be "materially and directly adverse to the interests of another client," or (2) when the representation reasonably appears "adversely limited" by responsibilities to another client, a third person or the firm's own interests. *In re B.L.D.*, 113 S.W.3d 340, 346 (Tex. 2003), *cert. denied*, 541 U.S. 945, 124 S. Ct. 1674 (2004)("Typically, courts look to the ethical rules promulgated by the State Bar to evaluate conflicts of interests in civil cases...Generally, ethical rules prohibit an attorney form jointly representing clients when the clients' interests are adverse to each other.")

thereto." (Emphasis added). At no time did Kirkpatrick advise Chris Kyle or Craft of these significant issues or obtain Chris Kyle's or Craft's consent.

20. Business transactions between a lawyer and a client are subject to the abuse of self-dealing.[4] The burden of establishing its perfect fairness, adequacy, and equity, is thrown upon the attorney, and in this case, Mr. Kirkpatrick. Clients, such as the Kyles, are vulnerable to lawyer overreaching because of their trust in their lawyers and because of their lawyers' presumed superior professional knowledge and skill...The strict scrutiny standard applies to all business dealings between lawyer and client.[5] Chris Kyle and Taya Kyle placed their trust with Kirkpatrick, and expected that he would serve their interests at all times. However, Kirkpatrick's loyalty lied with Bass and Hayman Capital, whose interests are directly and substantially adverse to those of Chris Kyle and Taya Kyle. Kirkpatrick was precluded from representing Chris Kyle and Taya Kyle in any fashion due to Kirkpatrick's personal interests and numerous conflicts of interests as well as his greater interest in Hayman Capital, Bass and Craft.

## Kirkpatrick Failed to Disclose His Relationship with J. Mitch Miller Who Abandoned the Estate of Chris Kyle As a Result of Kirkpatrick's and Bass' Personal Issues with Taya Kyle

21. Simultaneously, Mr. Kirkpatrick also served as the trustee on Taya Kyle and Chris Kyle's family trust, and also provided legal services and advice in connection with their respective estate planning. Again, Kirkpatrick never explained his various conflicts of interests to the Kyles so the Kyles never had an opportunity to make an informed decision or give their informed consent to Kirkpatrick's representation.

---

[4] *Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex. 1964)
[5] Tex. Comm. On Professional Ethics, Op. 483, 57 Tex. B.J. 200, 202 (1994)(citing *Archer*).

PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION—  PAGE 7
672442

22. Kirkpatrick also referred Chris Kyle and Taya Kyle to J. Mitch Miller to prepare certain estate planning on behalf of the Kyles. Mr. Kirkpatrick, as Chris and Taya Kyle's personal attorney, sat with them in meetings with Mr. Miller. As a result, Mr. Kirkpatrick became privy to confidential information concerning Chris and Taya Kyle's estate planning that was not meant or intended for public dissemination, and was to be held in the strictest confidence. Mr. Kirkpatrick never disclosed his conflict of interest he may have due to his or Mr. Bass' relationship with Mr. Miller and, therefore, the Kyles, once again, never had the requisite opportunity to give their informed consent to either Kirkpatrick's or Miller's representation.

23. After the untimely death of Chris Kyle, Mr. Miller abruptly abandoned Mrs. Taya Kyle after the filing of the probate petition in Ellis County. As a result of Mr. Miller's refusal to take Taya Kyle's phone calls, Taya Kyle was forced to retain the services of another law firm to complete the probate court filings in connection with the death of her husband. Upon information and belief, Mr. Miller was acting at the direction of Kirkpatrick and Bass as opposed to serving the best interests of Chris and Taya Kyle when he unilaterally abandoned Mrs. Taya Kyle during the pendency of the probate matter.

**Kirkpatrick Represents Craft's Competitor CIRM While Simultaneously Representing Chris Kyle and Craft Without Full Disclosure of the Conflict and Provides Advice to Chris Kyle for the benefit of CIRM and to the detriment of Chris Kyle**

24. Sometime in 2011, another entity was formed, Craft International Risk Management ("CIRM"), wherein Mr. Kirkpatrick not only served as counsel to, but also served as the registered agent, contrary to the interests of the Kyles, Craft, and his position as trustee of the Kyles' family trust. Mr. Kirkpatrick is believed to have prepared all the paperwork in the formation of CIRM, as well as negotiated contracts on behalf of CIRM. CIRM was a direct

competitor of Craft, and on information and belief, is believed to have usurped many contracts and business opportunities from Craft. Again, Kirkpatrick failed to make the mandatory disclosure of the conflicts of interest to Chris Kyle so Chris Kyle never had an opportunity to give his informed consent to Kirkpatrick's representation. It is clearly evident that the interests of Craft, Chris Kyle and CIRM – Kirkpatrick's clients – are directly adverse to the interests of each other. Representation of one client is "directly adverse" (and thus prohibited) to representation of another if the representation would adversely affect the lawyer's independent judgment or the lawyer's willingness or desire to consider any course of action. Such representation is prohibited because it will affect the lawyer in a number of ways, including the lawyer's desire, judgment or ability.[6]

25. Mr. Kirkpatrick advised Chris Kyle on numerous occasions that his ownership in CIRM would be reflected in CIRM's corporate records, however, it was learned after Chris Kyle's death that Kirkpatrick never finalized any such paperwork to reflect Chris Kyle's ownership in CIRM. Kirkpatrick now takes the adverse position that Chris Kyle did not own any interest in CIRM, despite numerous representations to the contrary. This is exactly why Rule 1.06 prohibits such dual representation. Kirkpatrick's representation of CIRM directly affected his ability to represent Chris Kyle's best interests, which has ultimately caused the Estate of Chris Kyle harm. Moreover, Kirkpatrick never disclosed the actual or potential conflict to Chris Kyle and, therefore, never gave him the opportunity to make an informed decision or give his informed consent to Kirkpatrick's representation.

---

[6] Texas Disciplinary Rules 1.06, cmt. 6.

**Kirkpatrick and Bass Conspire to Take Chris Kyle's Widow and Young Fatherless Children's Home Despite Bass' Promise to Pay off the Mortgage Because Kirkpatrick Failed to Document the Transaction As a Result of His Overriding Loyalty to Bass Over his Duties to Taya Kyle and In A Futile Attempt to Bully Taya Kyle in the Craft Bankruptcy**

26. On February 14, 2013 – twelve days after Chris Kyle was murdered – Bass offered to pay off the mortgage on Chris and Taya Kyles' home located in Midlothian, Texas. Bass' generous offer was not the only offer Taya Kyle received after the death of her husband. In fact, Mrs. Kyle received other requests from others asking if they could pay off her mortgage. Taya rejected those offers based on Bass' promise and Kirkpatrick's assurances that Kirkpatrick would not only handle the paperwork and properly document the transaction, but also ensure that it would be done in the most tax advantageous way. Upon information and belief, Bass has made all appropriate mortgage payments to date on behalf of Taya Kyle and the Estate of Chris Kyle. However, Bass and Kirkpatrick have taken the position that Bass is no longer responsible for the mortgage payments as it was simply a promise to promise, and not supported by consideration. Kirkpatrick failed to properly document the transaction on behalf of Taya Kyle, and has given Bass (the person who pays his paycheck) the opportunity to try to rescind the transaction. Taya Kyle detrimentally relied on Bass' and Kirkpatrick's promises, and contends that Bass' promise is enforceable. Taya Kyle and the Estate of Chris Kyle detrimentally relied on Kirkpatrick's legal advice in accepting Bass' promise to pay off the mortgage when she rejected other offers to pay off her and Chris Kyle's home mortgage loan. Kirkpatrick again failed to explain to Taya Kyle his various conflicts of interest in simultaneously representing her and Bass in this transaction so Taya Kyle never had the opportunity to give her informed consent as to Kirkpatrick's representation of her in this

transaction. Rule 1.06(a)(2) bars a lawyer from representing a client where that representation 'reasonably appears to be or becomes limited...by the lawyer's or law firm's own interests.'

27. As demonstrated herein, Kirkpatrick's simultaneous representation of Plaintiffs, Bass, Hayman Capital, Craft, CIRM, and himself all were limited, and as in the case with Bass' offer to pay off Plaintiffs' home mortgage, Kirkpatrick's interests, along with his employer's interests, limited any loyalty he owed to Plaintiffs.

### Kirkpatrick failed to disclose to Chris Kyle that Craft could seek the Proceeds from the *American Sniper* book

28. Despite Kirkpatrick's false allegations regarding the use and purpose of the proceeds from the book of *American Sniper*[7], it is Craft who is seeking **all** the proceeds from the *American Sniper* book in the pending bankruptcy matter. Kirkpatrick represented Chris Kyle in the negotiation of the book deal, and at no time did Kirkpatrick disclose to his client Chris Kyle that Craft could claim all the proceeds from the *American Sniper* book. Here, Kirkpatrick was advocating inconsistent positions that is expressly prohibited by the Disciplinary Rules, and which ultimately caused Plaintiffs harm. Moreover, Kirkpatrick failed to consult with Chris Kyle and Craft concerning the implications of the common representation, including the advantages, the risk and the effect of the attorney-client privileges. Chris Kyle was not properly advised of the risks of allowing Kirkpatrick to negotiate the book deal while Kirkpatrick simultaneously represented Craft, Bass and Hayman Capitals, who are creditors of Craft and have an interest in the proceeds of the *American Sniper* book. Kirkpatrick's representation of

---

[7] Chris Kyle specifically detailed his wishes as to the proceeds of the *American Sniper* in the event of his death, and such wishes are IN FACT being carried out as set forth by Mr. Kyle. Despite the confidences that Chris Kyle and Taya Kyle shared with Mr. Kirkpatrick, his wishes as to the distribution of profits *after* his death were not disclosed to Mr. Kirkpatrick and were finalized in writing by another advisor. Mr. Kirkpatrick, however, is in breach of his obligation to keep Chris Kyle's and Taya Kyle's confidences secret in connection with his wishes during his lifetime.

Chris Kyle was prohibited, and ultimately caused harm to the Estate of Chris Kyle and Plaintiffs.

**Kirkpatrick's Joint Representation of Chris Kyle, Taya Kyle, Craft, CIRM, Bass and Hayman Capital Is Prohibited by the Texas Disciplinary Rules**

29. Kirkpatrick represented Chris Kyle and Taya Kyle and served as trustee for Taya Kyle's and Chris Kyle's family trust, while simultaneously representing Craft, and simultaneously representing CIRM, and simultaneously representing investors in Craft and simultaneously representing Bass in various combinations on matters in which there are conflicting interests without any explanation of the conflicts of interests that he had and his duty to disclose them to Chris or Taya Kyle, and he further represented Chris Kyle and Taya Kyle in some matters where the conflict was irreconcilable.

30. Kirkpatrick often referred to himself as the "counselor to the situation" and would represent everyone, provide extensive legal advice, despite inherent and irreconcilable conflicts of interest, all without getting a signed engagement letter, disclosing his numerous conflicts of interest, or obtaining a signed waiver of conflicts of interest. Kirkpatrick never disclosed to the Kyles what "counselor to the situation" meant, never got a waiver from the Kyles, and never received informed consent from the Kyles. In certain situations, the conflict was irreconcilable to which no waiver could cure the inherent conflict. Neither Chris Kyle nor Taya Kyle were ever informed by Kirkpatrick of these conflicts of interests. Kirkpatrick also has failed, and continues to fail, to keep Chris Kyle and Taya Kyle's confidences secret. Kirkpatrick has a duty to keep confidences secret despite ongoing litigation, and is only allowed to divulge confidences that directly go to the allegations in this lawsuit. Kirkpatrick, however, has improperly divulged attorney-client confidences that are not subject to disclosure.

31. A lawyer is not even justified in asking a client for a waiver of conflicts when a disinterested lawyer would conclude that the client should not agree to the representation. A disinterested lawyer of ordinary prudence would not have approved a joint representation of Craft, Hayman Capital, Bass, Craft's individual founders, CIRM, Kirkpatrick himself, Taya Kyle, and Chris Kyle as there were multiple conflicts of interest, which prohibited Kirkpatrick from taking on such representation to which he never made full disclosure or obtained a waiver even though his conflicts were irreconcilable.

32. Rule 1.06 of the Texas Disciplinary Rules of Procedure addresses the manner in which a lawyer should deal with conflicts of interest between clients. Here, Kirkpatrick could not have reasonably believed that the representation of each client would not be adversely affected by joint representation, because the interests of Craft, Hayman Capital and CIRM were so complex and convoluted and unusual, especially in connection with Chris Kyle, that no single lawyer could have adequately advised and represented Chris Kyle as well as Craft, Hayman Capital, CIRM, and the other individual co-founders of Craft and CIRM. No waiver would allow such representation.

33. In Kirkpatrick's Original Answer, he alleged that as a representative of the Noteholders in the Craft bankruptcy,[8] he met with Gerrit Pronske, who represents the Estate of Chris Kyle and Taya Kyle in the bankruptcy, to negotiate the Noteholders' claims in connection with the Plaintiffs' claims in the bankruptcy. This action by Kirkpatrick – in of itself – is barred by Rule 1.06(b)(1). Kirkpatrick's representation of the Craft's Noteholders is materially and directly adverse to the interests of Kirkpatrick's other clients – the Kyles and Craft. Again, Kirkpatrick made no disclosure to Plaintiffs, and did not receive any informed consent from

---

[8] *See In Re: Craft International, LLC, Debtor;* Cause No. 14-32605-Bjh11; pending in The United States Bankruptcy Court For The Northern District Of Texas Dallas Division

PLAINTIFFS' FIRST AMENDED ORIGINAL PETITION—     PAGE 13
672442

them as to Kirkpatrick's representation. Kirkpatrick is prohibited from representing any of the parties in the Craft bankruptcy.

34. Rule 1.06 (c)(2) requires "full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any." Here, Kirkpatrick made no disclosures, and these issues were not disclosed in writing, as required by the standard of care where, as here, the clients were unsophisticated as to legal matters. Moreover, as a practical matter, it was not possible for Kirkpatrick to disclose to Chris Kyle and Taya Kyle all of the risks that were attendant to his lack of independent legal advice. Indeed, the way the events have played out were foreseeable consequences of the manner in which Kirkpatrick rendered legal services. It is evident that Kirkpatrick could not jointly represent Chris Kyle, Taya Kyle, Craft, CIRM, Hayman Capital, and the individual co-founders of Craft and CIRM, and Kirkpatrick himself in the various transactions that Kirkpatrick handled, including Craft's and Chris Kyle's intellectual property matters, in a manner consistent with Disciplinary Rule 1.06 and the pertinent common law standard of care.

### Kirkpatrick's and Bass' Deception Has Stolen Invaluable Time From a Grieving Widow and Her Young Children

35. Toward the end of Chris Kyle's life, he became aware the legal representation and alleged friendship between he and Kirkpatrick were not as they appeared. Weeks before Chris Kyle's death, he began to demand changes.

36. While grieving the loss of her husband, and grieving with her young fatherless children, Taya Kyle has been forced to spend countless days, nights, and waking moments having to deal with (and further uncover) the deception caused by Kirkpatrick, Craft executives and Bass. Taya Kyle lost her husband, her best friend, and her children's father, and yet, Bass and Kirkpatrick built a foundation of deception during Chris Kyle's lifetime. They continue to

lie, cheat, and steal from Chris Kyle and his family, simultaneously threatening to destroy the legacy of a legend if they are not successful in stealing it. Chris Kyle's image, likeness, honorable service record and intellectual property are not something a grieving family should have to fight for. This widow and her young fatherless children have lost a priceless future with Chris Kyle. The further loss of time with each other due to the hours Taya Kyle now has to spend fending off greed and theft of her husband's legacy is inexcusable and has caused irreparable harm.

## V. CAUSES OF ACTION

### A. LEGAL MALPRACTICE

37. Plaintiffs re-allege the above factual allegations, and incorporate them herein as if set forth in full.

38. Kirkpatrick, a lawyer, owed Chris Kyle and Taya Kyle, his clients, a duty of loyalty. By Kirkpatrick's negligent acts and omissions described above, he breached that duty. This breach proximately caused Chris Kyle and Taya Kyle injury, and the Estate of Chris Kyle as well as Taya Kyle suffered damages as a result. Accordingly, Plaintiffs request judgment against Kirkpatrick for all damages suffered. Further, the damages suffered by Plaintiffs resulted from gross negligence on the part of Kirkpatrick. Accordingly, Plaintiffs further request exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE, CHAPTER 41.

### B. BREACH OF CONTRACT

39. Plaintiffs re-allege the above factual allegations, and incorporate them herein as if set forth in full.

40. Plaintiffs and Kirkpatrick had a valid, enforceable contract for the rendition of legal services, to which Plaintiffs were a party and have standing to sue for breach of contract.

Plaintiffs either performed, tendered performance, or were excused from performing their contractual obligations under the contract.

41. Kirkpatrick breached the contract, and as a result of Kirkpatrick's breach of contract, Kirkpatrick has proximately caused actual and consequential damages to Plaintiffs in an amount within the jurisdictional limits of this Court, plus interest, costs, and post-judgment interest as allowed by law.

C. **BREACH OF FIDUCIARY DUTIES**

42. Plaintiffs re-allege the above factual allegations, and incorporate them herein as if set forth in full.

43. Plaintiffs would show that at all times relevant, an attorney/client relationship existed between them and Kirkpatrick, as that relationship is understood under Texas law. Plaintiffs would show that by virtue of this attorney-client relationship, Kirkpatrick owed Plaintiffs fiduciary duties, including duties of individual loyalty, confidentiality, candor, integrity, complete disclosure, honest, utmost fairness and good faith, and to refrain from self-dealing. By entering into the attorney-client relationship with Plaintiffs, Kirkpatrick assumed fiduciary duties and obligations to the Plaintiffs. Kirkpatrick owed Plaintiffs his utmost and undivided loyalty, free from any conflicts of interest.

44. Defendant should not have represented Plaintiffs because his representation was adversely limited by his responsibilities to other parties, and by his own self-interests, and thus, he was not able to consider, recommend, or carry out an appropriate course of action for Plaintiffs because of Kirkpatrick's own self-interests and his responsibilities to others.

45. The Plaintiffs were entitled to, and did, place their trust and confidence in Kirkpatrick, and did expect that he would represent them completely and zealously within the

bounds of the law, and in accordance with the Canons of Ethics and Disciplinary Rules applicable to attorneys licensed to practice in Texas.

46. Kirkpatrick breached his fiduciary duties to the Plaintiffs by violating the provisions of the Texas Disciplinary Rules of Professional Conduct, and by engaging in conduct, as more particularly described above, which constitutes multiple breaches of the fiduciary owed to Plaintiffs.

47. Plaintiffs would show that Kirkpatrick intentionally and knowingly breached his fiduciary duties to Plaintiffs, and that as a direct and proximate cause, damaged Plaintiffs in an amount well in excess of $1,000,000.00.

48. The conduct of Kirkpatrick was intentional as that term is defined in law, and justifies an award of exemplary damages to punish and deter such conduct in the future.

D. **NEGLIGENT MISREPRESENTATION**

49. Plaintiffs re-allege the above factual allegations, and incorporate them herein as if set forth in full.

50. By reason of Plaintiffs' reliance on the representations *and* fraudulent concealment of material facts by Defendant, Plaintiffs have been damaged in an amount within the jurisdictional limits of this Honorable Court. The misrepresentations and concealment of facts by Defendant were material. Defendant knew the misrepresentations and concealment of facts set forth herein were false. Alternatively, Defendant acted with reckless disregard whether the representations made by him were true. Plaintiffs relied upon the misrepresentations and the facts concealed by Defendant. Plaintiffs' reliance on these representations and concealment of facts was reasonable and justifiable. Plaintiffs have suffered and continues to suffer economic and non-economic losses because of the wrongful conduct of the Defendant.

51. The conduct of Kirkpatrick was intentional as that term is defined in law, and justifies an award of exemplary damages to punish and deter such conduct in the future.

## VI. ATTORNEY'S FEES, EXPENSES, COSTS, AND INTEREST

52. Request is made for all costs and reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiffs herein, including all fees due for Kirkpatrick's breach of contract, and all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

## VII. EXEMPLARY DAMAGES

53. The acts and omissions of Defendant Kirkpatrick complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching Defendant at the expense of Plaintiffs. In order to punish Defendant for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery from Defendant for exemplary damages as provided by the Texas Civil Practice and Remedies Code and the Texas Business and Commerce Code.

## VIII. JURY DEMAND

54. Plaintiffs demand a trial by jury on all issues so triable.

## IX. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Estate of Chris Kyle and Taya Kyle request that that upon final trial, they have judgment against Christopher Kirkpatrick, Esq., for their actual damages as set forth herein, in addition to exemplary damages, costs of court, prejudgment and post-judgment interest as allowed by law, and for such other and further relief to which they may be justly entitled.

**DATED:** September 26, 2014

Respectfully submitted,

*/S/ Shauna A. Izadi*
Lawrence J. Friedman
State Bar No. 07469300
Shauna A. Izadi
State Bar No. 24041170
FRIEDMAN & FEIGER, L.L.P.
5301 Spring Valley Road, Suite 200
Dallas, Texas 75254
Telephone: (972) 788-1400
Telecopier: (972) 776-5313
lfriedman@fflawoffice.com
sizadi@fflawoffice.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document has been served in accordance with the Texas Rules of Civil Procedure on September 26, 2014.

/s/ Shauna A. Izadi
Shauna A. Izadi